OPINION of the Court, by
Judge Bibb.
— "William Worley exhibited his bill in chancery against Joseph Ballinger, setting forth that Ballinger had bound himself to convey to Alexander S. Outlaw, certain real estate, in and adjoining Standford, and had given a bill of sale for certain personal property, according to an absolute bargain between them; that the bargain was rescinded : Ballinger, upon a settlement, fell indebted to Outlaw in the sum of fifteen hundred and eighty-four dollars; for the repayment of which Balienger agreed that Outlaw should retain the bond and bill of sale aforesaid as a lien on the property; that the bill of sale was assigned to Cuthbert Banks, and the obligation to convey the real estate was assigned to John P. Wag-non, with an endorsement that Ballinger might redeem the property by paying the said 1584 dollars ; that Bal-ienger induced the complainant to believe he would redeem the property and pay the whole of said sum, and proposed renting the property to the complainant, who, to enable said Ballinger to get possession, advanced 500 dollars to Wagnon ; that Ballinger failing to redeem, induced the complainant to become “ the purchaser of said contracts, for the full sum of 1584 dollars, including the said sum of 500 dollars,3’ and accordingly took assignments of the said writings ; that subsequent to this, the complainant, with the assent of Ballinger, sold 250 dollars worth of the property included in the bill of sale, and endorsed a credit therefor, leaving 1384 dob lars justly due the complainant, to be paid in mares and geldings, according to their real cash value ; that Bal-linger had not made payment in mares or geldings, nor conveyed the property; he therefore prays relief, &c.
The answer of Ballinger admits the sale to Outlaw ; that it was rescinded ; that, upon a settlement of the account respecting advances made by Outlaw on account of the purchase, he fell in arrear 1584 dollars ; that for this sum Outlaw was to retain a lien upon the property, redeemable in mares and geldings ; that this lien was assigned to Wagnon ; but Ballinger claims a discount against Outlaw for various sums which he says composed a part of the sum of 1584 dollars, on the faith of engagements, in the answer specified, made by Outlavr, *196 but which he has failed~to perform; that, before he had notice of the assignment, he paid to Outlaw eighty dollars in pictures ; that, after the contract was cancel-|6(]5 be took possession of the real estate and personal Property i that he rented the premises to the complainant and gave him peaceable possession, for which the complainant engaged to pay, and has paid, 500 dollars *n horses to Wagnon, for which a credit is endorsed, as exhibited by the bill, in part of the 1584 dollars: he alleges that, at the time of cancelling the contract with Outlaw, it was expressly agreed that the defendant might rent the premises to any person until the whole Qf tbe balance of 1584 dollars was satisfied by the rents : admits the payment of 250 dollars in furniture, as endorsed on the writing exhibited : he denies that any thing is justly due ; or that he advised the complainant to take the assignment in his bill set forth : he admits that the complainant did take the assignment in the bill mentioned, but alleges that, upon a just settlement, he has overpaid the demand.
A mortgagee fion^íhan^ac-count for pro. fits. — Ha^ 7, dak. ⅜
Redemption fcy contract In'horfes^t^aih value.
The mortgagor anything waT due, and acting agamft con-peiiing m C°th¡ mortgagee to mveftigate the throughout, he ought not to have any day fi»T<kindr'°and the decree for money was pro. fe-J
Other defendants were made in an amended bill, but n0 decree v/as made against them.
Upon a hearing of the cause, the court decreed the sum of 1334 dollars to the complainant; assigned a day for payment thereof in money; that on failure to pay, the defendant should be foreclosed, of his equity of redemption: which day elapsed without payment, and therefore the property was ordered to be sold to satisfy Worley, &c. To which decree Ballinger prosecuted this writ of error.
•The discounts, claimed by Ballinger as attached to the transaction in the hands of Outlaw, are matters set up in his answer by way of avoidance, and therefore require proof of their correctness. Some of the items remain as mere allegations, unsupported by a scintilla of evidence ; and others are spoken of in terms too doubtful to overhale and outweigh the settlement between Ballinger and Outlaw. But it appears that Bal-linger was present during the treaty between Wagnon and Worley : if he did not u advise,” he was privy and consenting to the arrangement between Wagnon and Worley, and to the endorsements on the obligations given by him to Outlaw ; he claims the benefit of the endorsements, one of which is subscribed by Worley *197 after the assignment to him ; he was-privy and consenting to the payment of 500 dollars by Worley to Wag-non, as one of the articles of the agreement by which Wagnon assigned his lien to Worley ; and yet it does not appear that Ballinger pretended or disclosed that the whole sum endorsed as the amount to be paid for redemption was in fact due. if, indeed there were any conditions or considerations yet due or unperformed by Outlaw to him, and included in the claim which Wor-ley was buying, Ballinger ought to have disclosed therm Having knowingly permitted Worley to become the purchaser without such disclosure relating to matters of fact then within his knowledge, if existing at all, he must now look to Outlaw only.
As between Worley and Ballinger a credit thus endorsed :
“ Received of Worley for Ballinger 500 dollars.
J. P. WAGNON.”
is in dispute, and not allowed as a credit to Ballinger by the decree. Upon the examination of the endorsements on the incumbrance exhibited, compared with a receipt given by Worley to Wagnon for certain household and kitchen furniture, and bearing date on the 15th of December, 1802, being the day of the assignment of the incumbrance to Worley, and connecting this evidence with the depositions, particularly that of Alexander Outlaw, (the father) no doubt can remain as to the true character of the transaction. Wagnori having purchased of Outlaw the incumbrance on Ballinger’s estate, had agreed to give Ballinger 500 dollars, for two years’ rent of the premises, (at 250 dollars per annum,) in part discharge of the incumbrance ; Worley, who had before been in treaty with Ballinger for a lease for two years, and was then anxious to take the lease, purchased of Wagnon the incumbrance, and, with the assent of Ballinger, paid to Wagnon the two years’ rent in horses, which sum was accordingly credited, and Wag-non discharged from his lease, Worley becoming lessee in his stead, and afterwards the assignee of the incum-brance. The claim of Worley for 1334 dollars, instead of 834 dollars, can be sustained upon the conjunction of two propositions only : first, that the contract for rent for two years was rescinded upon his becoming the as-signee of the incumbrance ; secondly, that when in pos *198 session of the premises he held them as mortua vadm until Ballinger redeemed by actual payment. The first is contradicted by the evidence ; the second is so likewise, and repugnant to the principles of both law and equity. For neither will convert, vivum vadium producing 250 dollars per annum, on which only 1334 dollars are advanced, to be repaid without any contingency, into mortuur/i vadium, ior which the bailee, trustee or mortgagee shall render no account during his possession. Neither would such an express stipulation of the parties be sanctioned. A mortgagee out of possession has but a dead pledge ; but when let into possession of an estate yielding profit, his pledge becomes a living one, for which he shall account, even so as to raise a charge against him after the extinguishment of interest and principal.
It has been insisted, that the court should have assigned a day for the payment in horses ; or if the decree was for money, that the amount should have been found by a jury impannelled and charged with the enquiry. If Ballinger had, without delay., acknowledged asum equal to that which (upon the adjustment) should have appeared in conscience then due, and offered to pay that sum in horses “ at their real cash value,” as stipulated; and the complainant would not accept that sum, but would go on for a larger, the delay being in that case attributable to the complainant, the court might, upon the bill to foreclose, have enquired whether a previous demand and refusal had been made, and according to the circumstances, might, in their discretion, have permitted the mortgagor to redeem in kind. But in this case the defendant would not acknowledge any balance against him ; he insisted on discounts against conscience, and compelled the complainant to investigate the demand throughout. This was equivalent to a refusal to pay on demand, and therefore he was not enti? tied to an extension of the time for paying in kind.
No jury was necessary, because the parties had stipulated, not for horses by number and description of uncertain value, but for a sum certain in horses at a real cash value. It would have been an idle question by a court to a jury, if horses of the real cash value of 834 dollars were of the value of 834 dollars in cash.
Upon the whole, we are of opinion, that in the decree there are two radical errors ; the ona in not allowing *199 the credit of 500 dollars, although endorsed on thé mortgage ; the other in omitting to take an account of the rents and profits received or chargeable during the occupancy of the complainant, and accruing subsequent to the expiration of the two years for which the 500 dollars were advanced and credited. But as it appears that Ballinger sold a part of the demised premises, particularly to Thomas Montgomery, who was put into possession to the exclusion of the complainant, equity dictates that he ought not to be compelled to pay full rent for only a part of the demise ; but that a reasonable abatement^ro tanto should be allowed.
It is therefore decreed and ordered, that the said decree of the Lincoln circuit court be reversed, and it is hereby set aside and annulled ; the cause is remanded to the said court, with directions to cause the account to be settled between the said Worley and Ballinger, before auditors to be appointed by said court, by charging against the said Ballinger the sum of eight hundred and thirty-four dollars, with interest thereon after the rate of six per centum per annum, to commence and be computed from the expiration of two years after said Worley came into possession of the premises ; and giving him credit for the annual rents 1 and profits of-the demised premises whilst in the occupancy or receipt of the complainant, subsequent to the expiration of the term of two years, for which the sum of 500 dollars, already credited, was advanced ; but deducting therefrom, and allowing to said Worley, all reasonable repairs, and all reasonable abatements for any portion of the demised premises not enjoyed by Worley or his lessees, by reason of the actings or defaults of the said Ballinger or those claiming under him : and when the account shall be so taken and adjusted, that for the balance found due to the complainant, if any, a decree be entered in favor of the complainant against the said Bal-linger, appointing a short day for payment; and on failure to comply with said decree, that said Ballinger be foreclosed of his equity of redemption, and that a sale of such part of the mortgaged premises as shall be necessary to satisfy the said balance so reported, together with costs of suit and charges of sale, be directed, according to the principles and usages of courts of equity : and finally, to make such other and farther orders and *200 decrees as shall be necessary to do right and equity between the parties, not inconsistent with the aforegoing opinion and decree;